**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Vickie Guanzon, | No. CV-17-01157-PHX-DWL |
| Plaintiff, | **ORDER** |
| v. | |
| Vixxo Corporation, | |
| Defendant. | |

This lawsuit involves a claim under the Fair Labor Standards Act ("FLSA") for unpaid overtime. It is brought by Plaintiff Vickie Guanzon ("Plaintiff") against Defendant Vixxo Corporation ("Vixxo"). The Court previously issued an order conditionally certifying Plaintiff to pursue a collective action on behalf of similarly-situated Vixxo employees. (Doc. 38.) Now that discovery has closed, Vixxo has moved to decertify the collective action. (Doc. 149.) As explained below, the motion will be granted.

**BACKGROUND**

A.   The Parties

Vixxo is a "facilities maintenance" company whose clients include convenience stores, retail establishments, grocery stores, and restaurants. In a nutshell, these companies hire Vixxo to help maintain their buildings and equipment. If, for an example, a convenience store that was a Vixxo client experienced a broken Slurpee machine, the store would call Vixxo, which would, in turn, arrange for a third-party service provider to come to the store and fix the machine.

Customer requests of this sort are usually routed to Vixxo employees known as Customer Service Representatives ("CSRs"). CSRs are trained to address such requests by selecting a service provider from a preapproved list and scheduling a service call. They are also trained to interact with customers and to follow-up on service requests to ensure the necessary repairs were completed. CSRs are not afforded much discretion when it comes to choosing which service provider to call and deciding how much money to authorize for a particular service call.

Vixxo also employs a different category of employees called Team Leads. Plaintiff is such an employee. Team Leads typically deal with only one customer. As discussed below, the parties disagree as to how much discretion and independent decision-making authority Team Leads possess.

Vixxo classifies all of its CSRs as "non-exempt" employees, in the parlance of the FLSA, and thus pays them for any overtime worked. In contrast, Vixxo classifies all of its Team Leads as "exempt" employees under the FLSA and doesn't pay them overtime.

B.  Procedural History

In April 2017, Plaintiff filed a complaint against Vixxo alleging that she and other Team Leads were misclassified as exempt under the FLSA and wrongfully denied overtime wages. (Doc. 1.)

In June 2017, Plaintiff moved for conditional certification to proceed as a collective action. (Doc. 19.)

On January 3, 2018, the Court granted Plaintiff's motion in part, allowing Plaintiff to "pursue relief with any similarly situated individuals" who fit the following description:

> All current and former "Customer Service Team Leads" (1) who were employed by Vixxo throughout the United States from three years prior to the issuance of the Notice to present, and (2) who were not paid overtime compensation for hours worked beyond forty (40) in a week at a rate not less than one and one-half (1.5) times their regular wage, and (3) who sign an agreement to join the class.

(Doc. 38 at 5-6.) The Court noted, however, that its conditional certification decision merely reflected a finding that Plaintiff had "met the lenient standard for notifying potential

class members about opting into the class" and that "[w]hether the differences between Team leads are substantial enough to defeat collective action is a question better resolved at the second stage of analysis after a period of discovery." (*Id.* at 4.)

On October 31, 2018, this case was reassigned to the undersigned judge. (Doc. 127.)

The opt-in period and discovery have now closed and a total of 37 Team Leads wish to proceed collectively as plaintiffs. During discovery, 12 of the 37 plaintiffs were deposed. (Doc. 149 at 7.)

On April 12, 2018, the Court heard oral argument on the motion to decertify.

## LEGAL STANDARD

The FLSA provides that a party may bring a collective action on behalf of other "similarly situated" employees. 29 U.S.C. § 216(b). The statute does not, however, define this crucial term. Until 2018, the Ninth Circuit also hadn't defined it.

In *Campbell v. City of Los Angeles*, 903 F.3d 1090 (9th Cir. 2018), the Ninth Circuit filled this void. Noting that "neither the FLSA nor the case law of this circuit offers much express guidance on collective action practice," *id.* at 1108, the *Campbell* court addressed three issues that are relevant here: (1) "the proper procedure for determining whether the collective action mechanism is appropriate" (*id.* at 1108-10); (2) "the meaning of the statutory term 'similarly situated'" (*id.* at 1110-17); and (3) "the standard the district court should apply in evaluating a post-discovery motion for decertification" (*id.* at 1117-19).

A.  Certification Procedure

First, the *Campbell* court observed that lower courts had "arrived at a loose consensus" that the proper certification procedure is a "two-step approach" under which (1) the plaintiff may, around the pleading stage, seek "preliminary certification" and (2) the employer may, at or after the close of discovery, file a motion for "decertification." *Id.* at 1108-10. The court concluded "as a matter of first impression in this circuit" that, although this approach is not compelled by the text of the FLSA or by Supreme Court precedent, it is generally appropriate. *Id.* The court summarized: "[A]s a general rule, the

two-step process, culminating in a decertification motion on or after the close of relevant discovery, has the advantage of ensuring early notice of plausible collective actions, then eliminating those whose promise is not borne out by the record." *Id.* at 1110.

B.   Definition Of "Similarly Situated"

Next, the *Campbell* court addressed "the meaning of the term 'similarly situated.'" *Id.* at 1110. The court began by noting that "[t]here is no established definition of the FLSA's 'similarly situated' requirement, nor is there an established test for enforcing it. This absence of authority is surprising, as being 'similarly situated' is a key condition for proceeding in a collective, and thus the issue on which a grant or denial of decertification generally depends." *Id.* at 1110-11.

Next, the court summarized the relevant case law on this topic. *Id.* at 1111-14. It noted that "two approaches to the 'similarly situated' requirement have emerged": (1) a "minority approach" of applying certification standards similar to those established by Rule 23 of the Federal Rules of Civil Procedure; and (2) a "majority approach," which is "often called—not very helpfully—the '*ad hoc*' test," that consists of "a three-prong test that focuses on points of potential factual or legal *dissimilarity* between party plaintiffs." *Id.*

The court declined to endorse either approach. As for the minority approach, the court concluded that "mimicking the Rule 23 standards in evaluating section 216(b) actions is not appropriate" because, *inter alia*, the two provisions are dissimilar "in language and structure and "unlike Rule 23, the collective action mechanism is, in effect, tailored specifically to vindicating federal labor rights." *Id.* at 1111-13. As for the majority approach, the court identified two "major flaws" with it: (1) it seeks to assess similarity "at such a high level of abstraction that it risks losing sight of the statute underlying it . . . [and] offers no clue as to what *kinds* of 'similarity' matter under the FLSA. It is, in effect, a balancing test with no fulcrum," *id.* at 1113-14; and (2) "its 'fairness and procedural considerations' prong'" is too "open-ended" and creates a temptation "to import, through a back door, requirements with no application to the FLSA—for example, the Rule 23(b)(3) requirements of adequacy of representation, superiority of the group litigation mechanism,

- 4 -

1  or predominance of common questions." *Id.* at 1115-16.

2  In an effort to avoid these flaws, the court articulated a new rule to be applied by
3  district courts within the Ninth Circuit. Specifically, it explained that "[t]he natural answer
4  to the proper inquiry—what 'similarly situated' means—is . . . that party plaintiffs must be
5  alike with regard to some *material* aspect of their litigation." *Id.* at 1114. The court
6  elaborated that "in the collective action context, what matters is not just *any* similarity
7  between party plaintiffs, but a legal or factual similarity material to the resolution of the
8  party plaintiffs' claims, in the sense of having the potential to advance these claims,
9  collectively, to some resolution." *Id.* at 1115. The court also emphasized that, although it
10 might be permissible in limited circumstances to grant a motion to decertify based on
11 procedural considerations, "decertification of a collective action of otherwise similarly
12 situated plaintiffs cannot be permitted unless the collective mechanism is truly infeasible."
13 *Id.* at 1116. Finally, in a footnote, the court clarified that "[w]e do not intend to preclude
14 the district courts from employing, if they wish, a version of the *ad hoc* test modified so as
15 to account for the flaws we have identified. Nor do we intend to preclude the district courts
16 from employing any other, differently titled or structured test that otherwise gives full
17 effect to our understanding of section 216(b)." *Id.* at 1117 n.21.

18 C.   Standard For Evaluating Decertification Motions

19 Last, the *Campbell* court "turn[ed] to the standard the district court should apply in
20 evaluating a post-discovery motion for decertification." *Id.* at 1117. The court concluded
21 that when "decertification overlaps with the merits of the underlying FLSA claims, the
22 summary judgment standard is the appropriate one." *Id.* The court further "emphasize[d]
23 . . . that as with a motion formally styled as summary judgment, the district court may not,
24 on a merits-dependent decertification motion, weigh evidence going to the merits. If
25 collective treatment is premised on a genuine dispute of material fact as to the merits of the
26 party plaintiffs' FLSA claims, the collective action cannot be decertified unless the factual
27 dispute is resolved against the plaintiffs' assertions by the appropriate factfinder." *Id.* at
28 1119. Finally, the court also clarified that the burden remains with the plaintiff, even at

- 5 -

the decertification stage, to demonstrate that collective treatment is appropriate. *Id.* at 1117-18 (citing *Morgan v. Family Dollar Stores, Inc.,* 551 F.3d 1233, 1261 (11th Cir. 2008)).[1]

**DISCUSSION**

A.  The Merits Dispute

Before addressing the parties' decertification-related arguments, it is necessary to identify the substantive FLSA issues that are at issue in this case. This is because, under *Campbell*, the decertification analysis must turn on whether the members of the plaintiff class are "alike with regard to some *material* aspect of their litigation. . . . [W]hat matters is not just *any* similarity between party plaintiffs, but a legal or factual similarity material to the resolution of the party plaintiffs' claims, in the sense of having the potential to advance these claims, collectively, to some resolution." 903 F.3d at 1114-15.

The primary disputed issue in this case is the applicability of the FLSA's "administrative exemption," which provides that an employee need not be paid overtime if three elements are satisfied: (1) the employee earns at least $455 each week, (2) the employee's "primary duty" is "the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers," and (3) that primary duty "includes the exercise of discretion and independent judgment with respect to matters of significance." 29 C.F.R. § 541.200(a).[2] Vixxo's

---

[1] In *Morgan*, the Eleventh Circuit held that, although "[t]he second stage is triggered by an employer's motion for decertification . . . [a]t this point, the district court has a much thicker record than it had at the notice stage, and can therefore make a more informed factual determination of similarity. The second stage is less lenient, and the plaintiff bears a heavier burden." 551 F.3d at 1261 (citations omitted).

[2] The FLSA also has an "executive exemption," which provides that an employee need not be paid overtime if the employee (1) earns at least $455 each week, (2) has the "primary duty" of "management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof"; (3) "customarily and regularly directs the work of two or more other employees"; and (4) has "the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion, or any other change of status of other employees are given particular weight." 29 C.F.R. § 541.100. Although Vixxo contends that some of the 37 plaintiffs were also properly classified as exempt under that exemption and seeks decertification on that basis (Doc. 149 at 16-17), the Court will not address this claim in light of its conclusions regarding the administrative exemption.

- 6 -

position is that all 37 Team Leads were properly classified as exempt because each met the $455 salary floor, each had a primary job responsibility—"ensuring that proper repairs were made to customers' facilities and equipment"—that satisfies the second element of the test, and each was vested with significant discretion and independent judgment when carrying out this responsibility. (Doc. 149 at 6-7.) Plaintiff's position, meanwhile, is that although the first element of the test is satisfied, she and the other plaintiffs were improperly classified as exempt because overseeing repair and maintenance requests doesn't satisfy the second element and Team Leads weren't, in any event, vested with a sufficient level of discretion and independent judgment to satisfy the third element. (Doc. 157 at 9-11.)

B.  The Parties' Decertification Arguments

In its motion to decertify (Doc. 149), Vixxo argues that the "critical question" in the case is whether the third element of the FLSA's administrative exemption is satisfied—that is, whether each plaintiff's "primary duties included the exercise of discretion and independent judgment with respect to matters of significance"—and that collective treatment of that question would be inappropriate because the 12 deposed plaintiffs' "testimonies differed significantly on fundamental job responsibilities and the discretion involved in performing them." (*Id.* at 7.) Specifically, Vixxo argues the deposed plaintiffs provided inconsistent testimony regarding whether they had discretion when performing the following seven job functions: (1) authorizing service calls that exceeded customers' preapproved cost limits;[3] (2) selecting new vendors to perform service calls;[4] (3) expediting service requests;[5] (4) receiving quotes from and negotiating rates with vendors and/or

---

[3] According to Vixxo, five plaintiffs (Bailey, Morse, Williams, Urciuoli, and Dillard) testified they had discretion to authorize such calls, while three plaintiffs (Salzarulo, Fagen, and Vertucci) testified they didn't. (*Id.* at 7-10.)

[4] According to Vixxo, seven plaintiffs (Morse, Williams, Vierheller, Urciouli, Dubek, Dillard, and Vertucci) testified they had discretion to recommend and/or choose new vendors, while four plaintiffs (Bailey, Salzarulo, Norgren, and Plaintiff) testified they weren't involved in this process. (*Id.* at 10-11.)

[5] According to Vixxo, four plaintiffs (Morse, Fagen, Dubek, and Dillard) testified they had discretion to expedite particular service requests if the circumstances required immediate action, while five plaintiffs (Williams, Vierheller, Norgren, Vertucci, and Plaintiff) testified they weren't allowed to expedite calls or required managerial approval

- 7 -

resolving billing disputes with customers;[6] (5) training other employees;[7] (6) making recommendations to improve policies and procedures;[8] and (7) serving as subject matter experts.[9] (*Id.* at 7-16.) Vixxo also cites a variety of cases suggesting these job functions has been recognized, in prior FLSA-related litigation, as potentially involving enough discretion and independent judgment to satisfy the third element of the administrative exemption. (*Id.*)

In her response (Doc. 157), Plaintiff begins by arguing that "[i]t is self-evident" that the burden falls onto Vixxo to justify decertification. (*Id.* at 2.) Next, Plaintiff identifies four reasons why decertification should be denied here. First, Plaintiff notes that Carla Coward, a consultant hired by Vixxo, concluded it was appropriate to use the same generic job description for all Team Leads. (*Id.* at 3-5.) According to Plaintiff, this decision to "designate[] *every* Team Lead as having substantially similar job duties and responsibilities" is "the opposite of what [Vixxo] claims here." (*Id.*) Second, Plaintiff argues that Vixxo has overstated the degree of discretion its Team Leads actually possessed. (*Id.* at 5-8, 11.) With respect to the first job function discussed in Vixxo's motion (authorizing service calls that exceed preapproved cost limits), Plaintiff argues such

---

to do so. (*Id.* at 11-12.)

[6] According to Vixxo, six plaintiffs (Salzarulo, Morse, Vierheller, Bailey, Dillard, and Fagen) testified they were responsible for getting quotes from service providers and had discretion to seek quotes from other providers if they thought the initial quote was too high, while four plaintiffs (Williams, Dubek, Vertucci, and Plaintiff) testified they weren't involved in obtaining quotes or assessing whether the quotes were too high. (*Id.* at 12-13.) Vixxo also contends that six plaintiffs (Salzarulo, Morse, Vierheller, Urciuoli, Dillard, and Plaintiff) testified they were responsible for handling billing disputes with customers. (*Id.*)

[7] According to Vixxo, four plaintiffs (Bailey, Salzarulo, Morse, and Urciuoli) testified they were responsible for training and coaching CSRs and/or other Team Leads, and another two plaintiffs (Dubek and Vertucci) testified they were responsible for mentoring CSRs, while at least three other plaintiffs (Fagen, Norgren, and Plaintiff) testified they had no responsibilities in these areas. (*Id.* at 14.)

[8] According to Vixxo, three plaintiffs (Vierheller, Norgren, and Plaintiff) testified they were responsible for recommending changes to Vixxo's internal processes, while one plaintiff (Dubek) claimed to possess no responsibility in this area. (*Id.* at 15.)

[9] According to Vixxo, three plaintiffs (Fagan, Vierheller, and Dubek) testified they served as Vixxo's in-house subject-matter experts on various topics (fish tanks, gas spills, and restaurant repairs, respectively), while the remaining plaintiffs failed to provide comparable testimony. (*Id.* at 15-16.)

discretion only existed in "emergency situations" and, even then, Team Leads were required "to follow a set protocol and were capped at a low dollar amount." (*Id.* at 6-7 n.20.) With respect to the second job function (selecting new vendors to perform service calls), Plaintiff argues that "the service providers were pre-selected from an approved list [and] Plaintiffs were not permitted to find new service providers outside the pre-approved list." (*Id.* at 6 n.15.) And with respect to the fifth function (training other employees), Plaintiff argues that Vixxo hasn't identified a specific "instance where a Team Lead's mentorship amounted to direct management of employees as required to meet the Administrative Exception's requirements." (*Id.* at 6 n.16.) Third, Plaintiff argues that it would violate the FLSA's remedial purpose, and be "judicially inefficient," to requite each plaintiff to individually litigate his or her claims. (*Id.* at 8-9.) Fourth, Plaintiff argues that Vixxo can't satisfy the second element of the administrative exemption because Team Leads aren't "actively engaged in the overall management of VIXXO Corporation." (*Id.* at 9-11.)

In its reply (Doc. 160), Vixxo first addresses the Coward evidence. Vixxo argues that Coward's testimony is only relevant to whether the alleged FLSA violations in this case were willful, Coward didn't testify that all Team Leads' job duties were the same, and the exemption analysis turns on the actual substance of each employee's work activities, not the job titles assigned by the employer. (*Id.* at 2-4.) Vixxo also cites various cases recognizing that decertification may be appropriate even when the plaintiff's theory is that an entire class of employees was misclassified. (*Id.* at 4-6.) As for Plaintiff's arguments concerning the second element of the administrative exemption, Vixxo argues that element may be satisfied by performing work for the employer's customers and, here, the Team Leads were responsible for maintaining the facilities of its customers. (*Id.* at 6-7.) Next, Vixxo argues that Plaintiff's arguments concerning the limited discretion possessed by Team Leads are "directly contrary to their own deposition testimony." (*Id.* at 7-9.) Vixxo also notes that Plaintiff did not even attempt, in her brief, to address several of the job functions identified in its motion. (*Id.* at 8 n.4.) Finally, Vixxo disputes Plaintiff's

arguments concerning the burden of proof and argues that the burden falls onto the FLSA plaintiff, even at the decertification stage, to prove similarity. (*Id.* at 11-12.)

C.   Preliminary Issues

The decertification analysis here turns on whether the 37 plaintiffs are similarly situated with respect to the amount of discretion they possessed—this is the issue that is "material to the resolution of the party plaintiffs' claims." *Campbell*, 903 F.3d at 1114-15. Before addressing that issue, however, it is necessary to resolve some additional issues raised in the parties' briefs.

First, Plaintiff's argument concerning the burden of proof (*i.e.,* it is "self evident" that the burden falls onto Vixxo to justify decertification) is incorrect. *Campbell* clarified that the burden of proof remains with the plaintiff, even at the decertification stage, to show that collective treatment is appropriate. *Id.* at 1117-18 (citing *Morgan,* 551 F.3d at 1261).[10]

Second, Plaintiff's arguments concerning the second element of the administrative exemption are both inaccurate and irrelevant. The text of the FLSA makes clear that the second element may be satisfied if the employee's primary duty "related to the management or general business operations of the employer *or* the employer's customers." 29 C.F.R. § 541.201(a) (emphasis added). *See also id.* § 541.201(c) ("[E]mployees acting as advisers or consultants to their employer's clients or customers . . . may be exempt."). Thus, the Team Leads may qualify even though they weren't actively involved in managing Vixxo's affairs—involvement in the affairs of Vixxo's clients can suffice. Additionally, the question presently before the Court isn't whether Plaintiff will ultimately prevail on her FLSA claim. Instead, it's whether the 37 plaintiffs are "similarly situated" in a manner that would warrant collective treatment of all of their claims. Vixxo concedes that all 37 plaintiffs *are* similarly situated for purposes of the second element of the administrative exemption. (Doc. 160 at 7 n.3.) The disputed issue is whether they're similarly situated for purposes of the third element.

---

[10] However, even if Vixxo did bear the burden of proof here, the Court would conclude that decertification is warranted.

- 10 -

Third, Plaintiff's arguments concerning the FLSA's statutory purpose, and the judicial inefficiency of proceeding with 37 separate lawsuits, are accurate but not dispositive. In *Campbell*, even though the Ninth Circuit emphasized "the FLSA's remedial purpose" and cautioned that "decertification of a collective action of otherwise similarly situated plaintiffs cannot be permitted unless the collective mechanism is truly infeasible," *id.* at 1116, the court ultimately affirmed the district court's decertification decision because the plaintiffs had failed to identify a legitimate "basis for proceeding in a Department-wide collective." *Id.* at 1121. Thus, even though the Court must afford deference to Plaintiff's desire to pursue collective litigation, this deference isn't a blank check—there still must be a showing that the 37 plaintiffs are similarly situated in material respects. *Cf. Hazelbaker v. Metropolitan Property & Casualty Ins. Co.*, 2014 WL 5304911, *5 (D. Ariz. 2014) (granting motion to decertify and noting that, although "[t]he Court does not take lightly the collective action's effect of reducing the burden on Plaintiffs through the pooling of resources . . . the multitude of individualized inquiries defeat the purpose of trying Plaintiffs' claims in common").

Fourth, Plaintiff's reliance on the Coward evidence is misplaced. Coward was a consultant who advised Vixxo to utilize the same generic job description for all Team Leads. Although Plaintiff's argument concerning the Coward evidence has some surface appeal—how can Vixxo argue its Team Leads possessed vastly divergent levels of discretion when its own job description seemed to characterize the positions as fungible?—courts have rejected similar arguments and made clear that the decertification analysis must turn on whether the class members were actually performing similar duties. For example, in *Stevens v. HMSHost Corp.*, 2014 WL 4261410 (E.D.N.Y. 2014), the district court granted a motion to decertify, even though the defendant had uniformly classified all of its assistant managers as exempt under the FLSA's executive exemption, because "the deposed plaintiffs' testimony evidences a wide disparity in both the amount of exempt work plaintiffs performed and the amount of authority and discretion plaintiffs were allowed to exercise." *Id.* at *5. In reaching this conclusion, the court noted that

"Defendants' blanket classification decision and uniform corporate policies do not on their own render plaintiffs similarly situated. Although it can be evidence of similarity, it is well established that blanket classification decisions do not automatically qualify the affected employees as similarly situated, nor eliminate the need to make a factual determination as to whether class members are actually performing similar duties." *Id.* (citation and internal quotation marks omitted). *See also Green v. Harbor Freight Tools USA, Inc.*, 888 F. Supp. 2d 1088, 1099 (D. Kan. 2012) ("Plaintiffs may not rely on the job description itself as generalized evidence of the scope and similarity of their daily activities. Instead, the Court must conduct a fact-intensive inquiry into the daily activities of each individual plaintiff in order to adequately identify the actual scope of Plaintiffs' job duties to determine the extent and consequences of any disparities among them."); *Beauperthuy v. 24 Hour Fitness USA, Inc.*, 772 F. Supp. 2d 1111, 1131 (N.D. Cal. 2011) ("The Ninth Circuit [has] made clear . . . that an analysis of what job duties each employee actually performed is more probative than an employer's classification policy when considering whether plaintiffs are similarly situated.") (citation omitted).[11]

D.  Decertification Analysis

On the merits, the Court agrees with Vixxo that decertification is required here because the 37 plaintiffs are not "similarly situated" with respect to the amount of discretion and independent decision-making authority they possessed. In its motion, Vixxo identified seven different job functions as to which the plaintiffs provided divergent deposition testimony concerning the degree of discretion they possessed. Vixxo also cited case law suggesting those job functions can trigger the administrative exemption if performed with a sufficient degree of discretion. *See, e.g., Clark v. Shop24 Global, LLC*, 77 F. Supp. 3d 660, 676-77 (S.D. Ohio 2015) (repairman wasn't entitled to summary judgment on FLSA misclassification claim because he had authority to "cho[o]se part supplier[s] without immediate direction or supervision" and "had discretion to choose the parts to buy for the Defendants' inventory, subject to financial approval from management

---

[11] *Beauperthuy* was abrogated on other grounds by *Campbell*.

for particularly expensive items"); *Bailey v. Alpha Techs. Inc.*, 2017 WL 4167929 (W.D. Wash. 2017) (granting summary judgment to employer in FLSA misclassification case in part because the plaintiff "had authority to commit the Defendants to matters of significant financial impact based on her unfettered discretion to purchase up to $10,000 of production inventory materials from outside manufacturers"). In her response, Plaintiff only attempted to address Vixxo's factual arguments concerning three of the seven functions (exceeding preapproved cost limits, selecting new vendors, and training other employees) and didn't dispute Vixxo's legal arguments concerning whether the identified functions can trigger the administrative exemption. These omissions, standing alone, suggest Vixxo's motion should be granted. *Cf. Hopkins v. Women's Div., Gen. Bd. Of Global Ministries*, 284 F. Supp. 2d 15, 25 (D.D.C. 2003) ("[W]hen a plaintiff files an opposition to a dispositive motion and addresses only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded.").

Moreover, some of the factual assertions contained in Plaintiff's brief are belied by the record. For example, although Plaintiff asserts that "Plaintiffs were not permitted to find new service providers outside of the pre-approved list" (Doc. 157 at 6 n.15), the only evidence cited by Plaintiff in support of this assertion is a passage from the Coward deposition. Yet in the cited passage, Coward stated she could only speculate on that topic. (Doc. 158-1 at 24-25 [Q: "Am I correct . . . that service provider has to be on the list provided by VIXXO?" A: "That would be speculation on my part, but I would think so."].) Moreover, two of the plaintiffs testified during their depositions that they *were* allowed to select new vendors without consulting a pre-approved list. (Doc. 150-1 at 138 [Urciuoli, answering "yes" to the question "so you had discretion on which vendors to use on any call"]; Doc. 150-1 at 39-40 [Williams, stating that the pre-approved list was often "outdated" and not "accurately updated" and that she sometimes had "to try to find somebody to get out there" when the vendors on the list weren't available].)

In short, Vixxo has demonstrated that the 12 plaintiffs who were deposed in this case provided divergent testimony concerning whether they had discretion to exceed

preapproved cost limits, select new vendors who weren't on a pre-approved list, expedite service requests, negotiate rates with vendors, resolve billing disputes with customers, and train other employees.[12] These aren't immaterial differences—they go to the heart of the merits issue to be decided at trial, which is whether each Team Lead was properly classified as exempt under the administrative exemption because he or she had a "primary duty that includes the exercise of discretion and independent judgment with respect to matters of significance." 29 C.F.R. § 541.200(a). Thus, the Court cannot conclude the 37 plaintiffs are "similarly situated" in a manner that would justify litigating their claims in a collective action. *Campbell*, 903 F.3d at 1114-15.[13]

Finally, it is worth noting that other courts have granted decertification requests in analogous circumstances. *See, e.g., Bradford v. CVS Pharmacy, Inc.*, 308 F.R.D. 696, 698-99 (N.D. Ga. 2015) (ordering decertification, even though the plaintiffs sought to challenge the employer's uniform application of the administrative exemption to all of its "regional loss prevention managers," because "the discovery has revealed multiple distinctions in the job duties performed by the various opt-in Plaintiffs . . . [that] will force the Court to conduct an individualized inquiry for each opt-in Plaintiff to determine whether a particular FLSA defense—*e.g.,* the administrative exemption—applies"); *Stevens*, 2014 WL 4261410 at *7 (ordering decertification, even though plaintiffs sought to challenge employer's uniform application of an exemption to an entire class of employees, because "the opt-in plaintiffs' testimony varies significantly with respect to the factors relevant to the FLSA exemptions").

…

…

---

[12] As discussed during oral argument, the Court is less persuaded that the final two job functions identified by Vixxo are the sort of functions that could satisfy the third element of the FLSA's administrative exemption.

[13] The Court would reach the same conclusion if it were to apply the "ad hoc" test as modified by *Campbell*. This case involves disparate employment settings between the plaintiffs, Vixxo would seek to advance individual defenses as to each plaintiff at trial, and fairness and procedural considerations support decertification because the multitude of individualized inquiries required at any trial would defeat the purpose of collective treatment.

Accordingly, **IT IS ORDERED** that:

(1) Vixxo's motion for decertification (Doc. 149) is **granted**;

(2) The claims of all opt-in plaintiffs are dismissed without prejudice; and

(3) This matter shall proceed in the name of Plaintiff Guanzon alone.

Dated this 12th day of April, 2019.

Dominic W. Lanza
United States District Judge