**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Vickie Guanzon,<br><br>       Plaintiff,<br><br>v.<br><br>Vixxo Corporation,<br><br>       Defendant. | No. CV-17-01157-PHX-DWL<br><br>**ORDER** |

This lawsuit involves a claim under the Fair Labor Standards Act ("FLSA") for unpaid overtime. It is brought by Plaintiff Vickie Guanzon ("Plaintiff") against Defendant Vixxo Corporation ("Vixxo"). Now pending before the Court are (1) Vixxo's motion for summary judgment (Doc. 172) and (2) Guanzon's motion for partial summary judgment (Doc. 173). In its motion, Vixxo contends that the facts, even when viewed in the light most favorable to Guanzon, show that Guanzon fell under the FLSA's administrative exemption and that Guanzon was therefore not entitled to overtime. Guanzon's motion seeks to eliminate some of the affirmative defenses raised by Vixxo in its answer. For the following reasons, the Court will deny both motions.

**BACKGROUND**

I.   <u>Factual Background</u>

Vixxo is a "facilities maintenance company that provides maintenance and strategic support services for various clients' facilities throughout the United States." (Doc. 172 at 2 & n.2.) Vixxo partners with service providers and technicians throughout the country,

and when a client calls, Vixxo facilitates the request and dispatches one of these providers to address the client's needs. (*Id.* at 2-3.)

When Vixxo receives a customer request, it is typically addressed by a Customer Service Representative ("CSR"). CSRs enter customer phone calls into Vixxo's system, which then automatically selects one of Vixxo's pre-approved service providers to respond to the customer's needs. (*Id.*) After a service provider has been dispatched, CSRs also perform follow-up work, ensuring that the services were completed in a timely manner. (*Id.*)

A step up in Vixxo's hierarchy are Team Leads, Guanzon's position.[1] The parties agree that Guanzon's primary responsibilities as a Team Lead were "resolving . . . service orders, making sure that [the service orders] are closed, getting updates on the actual service providers that were going out to the 7-Eleven store to make sure the work was completed. . . [and] supporting the 7-Eleven stores." (Doc. 172 at 4 [quoting Doc. 172-1 at 23 (Guanzon's description of her job duties)].) However, the parties disagree as to whether these responsibilities were materially different than those of a CSR. Vixxo characterizes Guanzon as more of a manager—she was "responsible for the [7-Eleven] stores within her assigned region," could authorize repair costs up to $1,500 according to her own judgment and discretion, and could assign or reassign priority to the service requests made by customers. (*Id.* at 4.) Guanzon was also, according to Vixxo, responsible for reviewing weekly reports on the work done by service providers to ensure they were meeting expectations. (*Id.*) In Vixxo's view, these were "substantively different job duties than CSRs." (*Id.* at 6.)

Guanzon disagrees. In her view, she did essentially the same work as the CSRs. (Doc. 182 at 9.) Although Guanzon acknowledges that Team Leads in other offices might have performed substantively different work than CSRs, she contends that her work at Vixxo's Scottsdale, Arizona office was the same as that of the CSRs who worked there.

---

[1] Guanzon was employed as a Team Lead from April 2015 to August 2016. (Doc. 1 ¶ 4; Doc. 18 ¶ 4.)

- 2 -

(*Id.* at 4-7.)

The difference (or lack thereof) is relevant because Vixxo classifies its CSRs as non-exempt under the FLSA, meaning they are entitled to overtime pay. (Doc. 172 at 3.) In contrast, Vixxo classifies Team Leads like Guanzon as exempt, meaning they receive no overtime pay. (*Id.*) This forms the crux of Guanzon's complaint—she contends she performed the same work as non-exempt employees, working in excess of 40 hours a week (sometimes responding in the middle of the night), yet received no overtime pay. (Doc. 1 ¶ 21; Doc. 172-1 at 39-40.)

II.   Procedural Background

On April 18, 2017, Guanzon filed this action.[2] (Doc. 1.) Pursuant to 29 U.S.C. 216(b), she brought a:

> [C]ollective action on behalf of the following class of potential opt-in litigants: All current and former Team Leads as well as similarly situated current and former employees holding comparable positions but different titles, who were employed by [Vixxo] in the United States during the time period three years prior to filing of the complaint to the present and who opt-in to this collective action.

(*Id.* ¶ 8.)

On May 31, 2017, Vixxo filed its answer. (Doc. 18.)

On June 5, 2017, Guanzon moved to conditionally certify her purported class. (Doc. 19.) Vixxo opposed the motion, arguing there was too much variance between Team Leads. (Doc. 27 at 1-2.) The Court modified Guanzon's proposed class but otherwise granted the motion for conditional certification. (Doc. 38 at 5-6.)

Ultimately, 41 plaintiffs opted into Guanzon's action. (Doc. 139 at 2.) Six were later dismissed for failing to comply with the discovery process. (Doc. 145.)

In February 2019, Guanzon moved for partial summary judgment that the separation agreements releasing claims against Vixxo signed by some of the opt-in plaintiffs did not

---

[2]   This case was originally assigned to Magistrate Judge Fine. (Doc. 4.) It was later reassigned to Chief Judge Snow (Docs. 8, 9) and then reassigned again to the undersigned judge (Doc. 127).

preclude this action. (Doc. 152 at 2.) Guanzon's motion was unopposed (Doc. 161) and the Court granted the motion (Doc. 163).

Around the same time, Vixxo filed a motion to decertify Guanzon's class. (Doc. 149.) Vixxo's basis for its motion was that each of the plaintiffs in this case had "significantly different job duties from one another, making collective treatment of this case not only infeasible, but virtually impossible." (*Id.* at 1.) Guanzon opposed the motion, arguing that certification was proper. (Doc. 157.) The Court concluded that decertification was required because the plaintiffs were not similarly situated. (Doc. 167 at 12.) The plaintiffs had varying degrees of authority, which the Court found dispositive. (*Id.* at 12-14.) Accordingly, the opt-in plaintiffs' claims were dismissed without prejudice and Guanzon's case was allowed to proceed in her name alone. (*Id.* at 15.)

Vixxo has now filed a motion for summary judgment, arguing that, as a matter of law, Guanzon was exempt from the FLSA's overtime requirements. (Doc. 172.) Guanzon has filed a motion for partial summary judgment, seeking to "terminate" several of the affirmative defenses Vixxo raised in its answer. (Doc. 173 at 2.) Both motions are now fully briefed[3] and nobody has requested oral argument.

## ANALYSIS

A party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "In order to carry its burden of production, the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). "If . . .

---

[3] Guanzon has not provided a reply to Vixxo's response to her motion for partial summary judgment.

[the] moving party carries its burden of production, the nonmoving party must produce evidence to support its claim or defense." *Id.* at 1103.

"Summary judgment is appropriate when 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Rookaird v. BNSF Ry. Co.*, 908 F.3d 451, 459 (9th Cir. 2018) (quoting Fed. R. Civ. P. 56(a)). "A genuine dispute of material fact exists if 'there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.'" *United States v. JP Morgan Chase Bank Account No. Ending 8215 in Name of Ladislao V. Samaniego, VL: $ 446,377.36*, 835 F.3d 1159, 1162 (9th Cir. 2016) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986)). The court "must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inference in the nonmoving party's favor." *Rookaird*, 908 F.3d at 459. Summary judgment is also appropriate against a party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

Because Vixxo's motion, if granted, would render Guanzon's motion moot, it is discussed first.

I.      Vixxo's Motion For Summary Judgment

In its motion for summary judgment, Vixxo asserts that "[a]ccepting [Guanzon's] testimony as true, [Guanzon] was properly classified as exempt under the administrative exemption of the [FLSA]." (Doc. 172 at 2.) Guanzon disagrees—in her view, she performed the same work as those who received overtime. (Doc. 182 at 1-2.)

Ordinarily, the FLSA requires that an employer pay time and a half for work in excess of 40 hours in a week. *McKeen-Chaplin v. Provident Savings Bank, FSB*, 862 F.3d 847, 850 (9th Cir. 2017). However, employees who fall within an exemption outlined in 29 U.S.C. § 213(a) are not entitled to overtime pay under the FLSA. *Id.* Where, as here, an employer claims that an employee falls within an FLSA exemption, the employer bears the burden of proving the employee is exempt. *Id.* An employer must demonstrate that

each individual employee qualifies for an exemption—it cannot rely on class-wide determinations. *Bothell v. Phase Metrics, Inc.*, 299 F.3d 1120, 1125 (9th Cir. 2002).

How a particular employee spends her time is a question of fact. *Id.* at 1124. Whether particular activities fall within an FLSA exemption, however, is a question of law. *Id.* For purposes of its motion, Vixxo accepts Guanzon's testimony as to her duties. (Doc. 172.) Guanzon agrees that the "dominant issue" is whether her activities fall under an FLSA exemption. (Doc. 182 at 2.)

Vixxo claims Guanzon is exempt under 29 U.S.C. § 213(a)(1). That section excludes "any employee employed in a bona fide executive, administrative, or professional capacity" from the FLSA's overtime requirements. *Id.* Vixxo contends that Guanzon is an administrative employee, specifically because of the duties she performs for Vixxo's customers. 29 C.F.R. § 541.201(c) ("An employee may qualify for the administrative exemption if the employee's primary duty is the performance of work directly related to the management or general business operations of the employer's customers. Thus, for example, employees acting as advisers or consultants to their employer's clients or customers (as tax experts or financial consultants, for example) may be exempt.").[4]

To determine whether an employee is an administrative employee, courts apply the "short test" articulated in 29 C.F.R. § 541.200. *McKeen-Chaplin*, 862 F.3d at 850-51. The "short test" has three components: (1) whether the employee's wages exceed a threshold amount, which is not at issue in this case (Doc. 172 at 7; Doc. 182 [not disputing that the wage requirement is met]); (2) whether the employee's "primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers"; and (3) whether the employee's "primary duty includes the exercise of discretion and independent judgment with respect to matters of significance." 29 C.F.R. § 541.200(a). "These three conditions 'are explicit prerequisites to exemption, not merely suggested guidelines.'" *McKeen-Chaplin*, 862 F.3d

---

[4] Courts within the Ninth Circuit "must give deference to DOL's [the Department of Labor's] regulations interpreting the FLSA." *McKeen-Chaplin*, 862 F.3d at 850 (citations and internal quotation marks omitted).

at 851 (citation omitted). Thus, Vixxo must prove that Guanzon meets every requirement. *Bothell*, 299 F.3d at 1125.

### A. Discretion And Independent Judgment

An employee's duties fall under the third prong if those duties primarily "include the exercise of discretion and independent judgment with respect to matters of significance." 29 C.F.R. § 541.202(a). "In general, the exercise of discretion and judgment involves the comparison and the evaluation of possible courses of conduct, and acting or making a decision after the various possibilities have been considered." *Id.* Whether a matter is significant "refers to the level of importance or consequence of the work performed." *Id.*

"Discretion and independent judgment" is assessed "in the light of all the facts involved in the particular employment situation in which the question arises." *Id.* § 541.202(b). The exercise of such discretion "implies that the employee has authority to make an independent choice, free from immediate direction or supervision," but does not necessarily preclude later review from a superior. *Id.* § 541.202(c). "The exercise of discretion and independent judgment must be more than the use of skill in applying well-established techniques, procedures, or specific standards described in manuals or other sources." *Id.* § 541.202(e).

Vixxo focuses on three of Guanzon's duties in an attempt to establish she exercised discretion and independent judgment. First, Vixxo argues that Guanzon's ability to authorize repair amounts that exceeded pre-negotiated limits indicates that she exercised discretion and independent judgment. (Doc. 172 at 12.) To fully utilize that authority, Guanzon had to "analyze the requests [to exceed the limit] and make a judgement call as to whether the requests 'made sense.'" (*Id.* [quoting Guanzon's deposition].)

Second, Vixxo claims that Guanzon exercised discretion and independent judgment when she determined the priority of service calls. (*Id.*) When a store for which Guanzon was responsible requested service, it was able to select a priority level on its own. (*Id.* at 13.) Guanzon, though, could later use her own judgment and adjust the priority level up

or down, "depending on her independent assessment of the situation." (*Id.*) In essence, this meant that Guanzon could control how speedy the response was to a given service request, because different levels of priority warranted different response times. (*Id.*) In particular, Vixxo relies on Guanzon's own description of a middle-of-the-night call where she had to "analyze the situation, recognize that it was an emergency situation, and then come up with a plan to remediate the problem in a timely manner." (*Id.*)

Third, Vixxo points to the fact that "Guanzon was also responsible for ensuring service providers provided excellent service and were qualified to handle service calls." (*Id.* at 14.) This duty entailed "follow-up work," in which Guanzon would check in with Vixxo's service providers, "build rapport" with them, and provide feedback on how they were doing. (*Id.*) In Vixxo's view, this required the exercise of discretion and independent judgment. (*Id.*)

Guanzon disagrees with these assertions. She argues that the difference in her cost-approval authority was not significantly different from the non-exempt CSRs around her. (Doc. 182 at 9 n.9.) More important, she argues she did not exercise discretion in using that authority—instead, any deviation had to "meet the requirements" set out by Vixxo. (*Id.* at 9-10; Doc. 182-3 at 8.) Further, Guanzon claims that any authority to adjust the priority of a service call is illusory. (Doc. 182 at 10-11.) Instead, she contends, the true authority to adjust service call priority rested with her superior, removing her discretion and independent judgment from the equation. (*Id.*) Finally, Guanzon argues that her review of service provider performance was not really her "responsibility." (*Id.* at 12.) Guanzon admits that she "built a rapport" with the service providers, but this was not exclusive to her role—both she, as a Team Lead, and the CSRs performed this task. (*Id.*) According to Guanzon, the only employee who used service provider review information for discipline—that is, used it in a discretionary way—was her superior. (*Id.*) At bottom, Guanzon contends she was not free to use her own judgment. Instead, she had to follow protocols provided by Vixxo. (Doc. 172-1 at 57 [performance review, stating Guanzon had "a good command on the SOPs [standard operating procedures] and procedures"]; Doc.

182-5 at 5-11 [detailed manual, entitled "FSN 7-Eleven Standard Operating Procedure," whose "purpose . . . is to outline the process for handling NTE (Not to Exceed) increases of any amount"].)

In broad strokes, Guanzon and Vixxo agree on the substance of Guanzon's duties. They disagree about the extent to which Guanzon exercised discretion when performing those duties. This situation is akin to *Bigger v. Facebook*, *Inc.*, __ F.3d __, 2020 WL 401804 (7th Cir. 2020). In *Bigger*, a "customer solutions manager" sued her employer, Facebook, under the FLSA, alleging that she had been improperly classified as exempt from the Act's overtime requirements. *Id.* at *1-2. Facebook argued it was entitled to summary judgment because the employee "was expected to perform duties with a significant amount of autonomy and independence." *Id.* at *9. The employee did not dispute the nature of her duties but disputed whether she exercised discretion when performing those duties, arguing that "she merely took direction from clients and her supervisor, and implemented prescribed steps from manuals, scripts, and templates." *Id.* The district court denied summary judgment and the Seventh Circuit affirmed, holding that "the submitted evidence does not establish all the facts necessary to determine whether [the employee] fits the administrative exemption," even though the parties largely agreed on the nature of the employee's duties, because "we cannot conclude that, as a matter of law, [the employee] customarily and regularly did more than apply well-established techniques, procedures, or specific standards prescribed by Facebook." *Id.*

So, too, here. At bottom, the parties have submitted competing facts concerning how much discretion Guanzon exhibited when performing her duties. There is enough evidence in the record to support either position and the ultimate decision is a question of fact.

Vixxo's citations to the contrary are unavailing. For example, Vixxo cites *Gonzalez v. Batmasian*, 734 Fed. App'x 677 (11th Cir. 2018), for the proposition that a "plaintiff was properly subject to the administrative exemption where one of her primary job duties was to approve major repairs." (Doc. 172 at 12.) But in *Gonzalez,* the Eleventh Circuit was

asked to review a jury verdict. *Gonzalez*, 734 Fed. App'x at 678. Because the trial was largely a "he said, she said" situation, it was left to the jury to credit whichever side it believed. *Id.* at 681-82. The same is true here—there is a factual dispute for the jury to resolve.

Vixxo also seeks to characterize the parties' dispute as legal in nature. It cites a variety of cases that have recognized that a variety of job duties can meet the discretionary requirement of the administrative exemption. (Doc. 172 at 12-15.) Here, though, there's an antecedent issue—whether Guanzon truly exercised discretion and independent judgment in the course of her duties. Until that factual dispute is resolved, whether those duties legally satisfy the administrative exemption cannot be answered. Thus, Vixxo is not entitled to summary judgment.[5]

B. **Work Directly Related To The Management Or General Business Operations Of The Employer's Customers**

Although the factual dispute concerning the third prong of the administrative exemption is enough to deny Vixxo's motion for summary judgment, summary judgment is also inappropriate under the second prong. To determine whether an employee's primary duties meet the second requirement, "an employee must perform work directly related to assisting with the running or servicing of a business, as distinguished, for example, from working on a manufacturing production line or selling a product in a retail service establishment." 29 C.F.R. § 541.201(a). This framework is often referred to as the "administrative-production" dichotomy. *McKeen-Chaplin*, 862 F.3d at 851.

Vixxo argues that Guanzon falls on the administrative side of the dichotomy because her "primary duties involved performing office work directly related to the management or general business operations of Vixxo's customers." (Doc. 172 at 7-9; Doc.

---

[5] Additionally, much of Vixxo's briefing on this issue is premised on the "significant financial losses" that the 7-Eleven stores served by Guanzon would have experienced if she did her job improperly. (Doc. 172 at 12-14; Doc. 185 at 6-7.) That alone is not enough to establish that an employee exercised discretion or independent judgment. 29 C.F.R. § 541.202(f) ("An employee does not exercise discretion and independent judgment with respect to matters of significance merely because the employer will experience financial losses if the employee fails to perform the job properly.").

- 10 -

185 at 2-4.) In support of this argument, Vixxo relies primarily on *Renfro v. Ind. Mich. Power Co.*, 370 F.3d 512 (6th Cir. 2004).

This is a more complicated question than Vixxo's brief portrays it to be.[6] In *Renfro*, employees at a nuclear power plant who took "job orders that identify work (maintenance or new construction) and prepare[d] work packages that the plant's craft workers use[d] to perform work in the field" were found to fall under the administrative exemption. *Id.* at 515. In determining whether those employees' work satisfied the second requirement of the exemption, the Sixth Circuit employed the administrative-production dichotomy. *Id.* at 517. In doing so, it characterized the employer's business as "generating electricity, and the product it offered the public is electricity." *Id.* at 517-18. The employees did not participate in the production of electricity, but rather performed duties that were "ancillary to [the employer's] principal production activity." *Id.* at 518. This conclusion was dispositive, in the Sixth Circuit's view, because "when employees engage in work that is ancillary to an employer's principal production activity, those employees are administrative." *Id.* at 517 (internal quotes and citation omitted).

The difficulty with Vixxo's reliance on *Renfro* is that the Ninth Circuit doesn't adhere to the Sixth Circuit's view that an employee who performs work that is "ancillary" to the employer's production work necessarily falls on the administrative side of the dichotomy. In *Bothell*, the Ninth Circuit rejected the district court's conclusion "that all activities 'ancillary' to a business' core activities are 'administrative' activities" and

---

[6] Guanzon's arguments concerning the second prong of the administrative exemption are not particularly helpful. (Doc. 182 at 15.) The only argument Guanzon develops in any depth is that, under 29 C.F.R. § 541.203(c), an employee's primary duty must be to complete "major projects" and there is a genuine dispute of material fact over whether the type of work she performed for Vixxo's clients could qualify as a "major project." But 29 C.F.R. § 541.203(c) simply identifies a non-exclusive example of an employee who could be classified as exempt under the administrative exemption—it states that "[a]n employee who leads a team of other employees assigned to complete major projects for the employer . . . generally meets the duties requirements for the administrative exemption, even if the employee does not have direct supervisory responsibility over the other employees on the team." Vixxo has never argued in this case that Team Leads perform the sort of work (*i.e.,* managing a team of employees who work on major projects) described in section 541.203(c). The other subdivisions within section 541.203 provide other examples of employees who likely could be classified as exempt under the administrative exemption, and none of those subdivisions says anything about "major projects."

- 11 -

emphasized that "[d]efining [an employee's] work as 'ancillary customer service' work does not end the analysis." 299 F.3d at 1126-27. Similarly, in *McKeen-Chaplin*, the Ninth Circuit disagreed with the Sixth Circuit's conclusion in a post-*Renfro* case that certain employees were exempt because "they 'perform work that . . . [is] ancillary to [the Bank's] principal production activity." 862 F.3d at 852 (citing *Lutz v. Huntington Bancshares, Inc.,* 815 F.3d 988 (6th Cir. 2016)).

*Bothell* provides both the correct test and a closer analogy. *Bothell* involved a "field service engineer" who worked for a company that produced and sold high-tech robotic equipment. 299 F.3d at 1122-23. At summary judgment, although the employee characterized himself as "essentially a repairman" and "the high-tech equivalent of the Xerox machine man who meets and confers with customers to identify the problem . . . [and] repairs the equipment based on procedures established by the manufacturer," the employer presented facts suggesting the employee was actually responsible for managing a particular customer's account, performing "all of the administrative aspects of that task, such as . . . billing," and acting as an advisor to the customer. *Id.* at 1128. The district court granted summary judgment to the employer but the Ninth Circuit reversed. Although the court recognized that some types of customer service work (such as negotiating with clients and settling claims) can qualify as exempt, and although the court further recognized that the employer's proffered evidence "could support the ultimate conclusion that [the employee's] work directly related to management policies and general business operations," the court concluded that neither party was entitled to summary judgment in light of the underlying factual disputes. *Id.*

*Bothell* suggests that summary judgment is inappropriate here, too. Although Vixxo has proffered evidence suggesting that Guanzon was responsible "for performing office work directly related to the management or general business operations of Vixxo's customers" (Doc. 172 at 9), Guanzon has proffered her own evidence suggesting she was merely responsible for helping maintain 7-Eleven's spaces—in other words, keeping the production line going. A jury should resolve these factual disputes.

The two CFR citations provided for the first time in Vixxo's reply (Doc. 185 at 4), even assuming they are properly before the Court,[7] also do not compel the conclusion that Vixxo is entitled to summary judgment. Vixxo first cites 29 C.F.R. § 541.203(f), which states that "[p]urchasing agents with authority to bind the company on significant purchases generally meet the duties requirement for the administrative exemption . . . ." The Department of Labor, however, has issued guidance that "purchasing agents" that fall within the administrative exemption "play a primary role in vendor selection, researching vendors, requesting quotes, negotiating with potential vendors, and making a recommendation for vendor selection." Opinion Letter Fair Labor Standards Act (FLSA), 2008 WL 833151, *1 (U.S. Dep't of Labor Mar. 6, 2008).[8] *See also McKnight v. Honeywell Safety Products USA, Inc.*, 2017 WL 3447894, *6 (D.R.I. 2017). Vixxo has offered no evidence that Guanzon played a "primary role in vendor selection," researched vendors, requested quotes, or negotiated with potential vendors.

The second regulation is 29 C.F.R. § 541.203(d), which exempts "[a]n executive assistant or administrative assistant to a business owner or senior executive of a large business . . . if such employee, without specific instructions or prescribed procedures, has been delegated authority regarding matters of significance." But the Labor Department's guidance indicates that, to fall under this exemption, an assistant must have the broad authority to act in place of her boss. *See* Opinion Letter Fair Labor Standards Act (FLSA), 2006 WL 4512965, *1-*2, *6 (U.S. Dep't of Labor Oct. 26, 2006) (indicating that an executive assistant fell within the administrative exemption when she prepared responses on behalf of the company president with little supervision and was responsible for contract negotiations) This gives rise to a "distinction between simple, micro-level" duties and "more complicated, macro-level planning, assessment, and advising." *Reber v. AIMCO/Bethesda Holdings, Inc.*, 2008 WL 4384147, *5 (C.D. Cal. 2008). But this case

---

[7] *Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007) ("The district court need not consider arguments raised for the first time in a reply brief.").

[8] Courts within the Ninth Circuit "must give deference to the DOL's interpretation of its own regulations through, for example, Opinion Letters." *In re Farmers Ins. Exchange, Claims Representatives' Overtime Pay Litig.*, 481 F.3d 1119, 1129 (9th Cir. 2007).

involves disputed factual issues concerning just how much discretion Guanzon possessed. Thus, Vixxo is not entitled to summary judgment as to the second element of the administrative exemption.[9]

II. Guanzon's Motion For Partial Summary Judgment

Guanzon's motion for partial summary judgment focuses on the 22 affirmative defenses listed in Vixxo's answer. (Doc. 173.) Guanzon asserts that Vixxo has failed to allege facts to support affirmative defenses 1, 5-11, 16, and 21. (*Id.* at 2.) Vixxo counters that Guanzon has failed to cite any authority in the record to support summary judgment on its affirmative defenses. (Doc. 181 at 1.)

A. **Preliminary Matters**

The first defense listed in Vixxo's answer was not a defense at all, but an assertion that Guanzon had failed to state a claim upon which relief could be granted. (Doc. 18 at 4.) That argument should have been brought by motion and Vixxo agrees it is now waived. (Doc. 181 at 1 n.1.) Accordingly, Guanzon's request for summary judgment as to this affirmative defense is moot.

Affirmative defense 16 is similarly moot. (Doc. 18 at 6.) That defense turned on Guanzon signing a waiver of claims. The Court has already granted summary judgment to Guanzon on that issue, and Vixxo agrees that affirmative defense 16 is now moot. (Doc. 163; Doc. 181 at 1 n.1.)

By previous stipulation and order, Vixxo withdrew affirmative defenses 14, 15, 19, and 20. (Docs. 168, 170.) The decertification of Guanzon's collective action renders affirmative defenses 12 and 13 irrelevant. (Doc. 167.) Finally, in its response to Guanzon's motion for partial summary judgment, Vixxo agrees that affirmative defense 8 is inapplicable to Guanzon. (Doc. 181 at 1 n.1.)

Thus, Vixxo's remaining affirmative defenses are 2-7, 9-11, 17, 18, 21, and 22. Accordingly, the Court will address Guanzon's motion for summary judgment as it regards

---

[9] Guanzon has made a passing request for summary judgment in her favor pursuant to Rule 56(f). (Doc. 182 at 2.) Vixxo, however, plans to dispute Guanzon's factual basis for relief at trial. (Doc. 185 at 2 n.1.) For that reason, summary judgment for Guanzon would be inappropriate. *Albino v. Baca*, 747 F.3d 1162, 1176-77 (9th Cir. 2014).

- 14 -

affirmative defenses 5-7, 9-11, and 21.

B. **Merits**

On the merits, Guanzon argues that Vixxo "should not be rewarded for the litigation tactic of throwing anything at the wall to see what sticks." (Doc. 173 at 5.) Guanzon expands on that point, arguing that the pleading standard outlined in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), governs Vixxo's affirmative defenses and that Vixxo has failed to meet that standard. (*Id.* at 3-5.)

This argument is unavailing. *Twombly* and *Iqbal* govern pleadings and the proper standard for a motion to dismiss. At issue here, though, is a motion for partial summary judgment, which is governed by a different standard—Rule 56. And under Rule 56, the moving party must demonstrate there is no genuine dispute of material fact. Guanzon has not even attempted to make such a demonstration.

Guanzon's motion for partial summary judgment is, for practical purposes, a motion to strike affirmative defenses under Rule 12(f). "The standard for striking an affirmative defense is effectively the same as for granting a motion under Rule (12)(b)(6)." 1 Gensler, Federal Rules of Civil Procedure Rules and Commentary, Rule 12, at 317 (2018). Motions under Rule 12(b)(6) are subject to the *Twombly*/*Iqbal* standard, which could explain Guanzon's arguments.[10]

Motions to strike under Rule 12(f)(2), however, are due 21 days after a party is served with the pleading at issue. Guanzon's motion was filed nearly two years after Vixxo's answer. A motion to strike, then, is untimely. A motion for summary judgment on affirmative defenses, on the other hand, is still a procedural possibility. *E.E.O.C. v. Fred Meyer Stores, Inc.*, 954 F. Supp. 2d 1104, 1112-13 (D. Ore. 2013). Thus, despite Guanzon's foray into the standard for a motion to dismiss or strike, the standard that applies

---

[10] That said, whether *Twombly* and *Iqbal* apply to affirmative defenses is an open question. The "strong trend" is that *Twombly* and *Iqbal* do not apply to affirmative defense pleadings and that defendants need only satisfy a lower standard to adequately plead affirmative defenses. Gensler, Rule 8, at 181. The Courts of Appeals have yet to definitively weigh in on the issue. *Id.* at 182. *See also Kohler v. Flava Enters., Inc.*, 779 F.3d 1016, 1019 (9th Cir. 2015) (suggesting that affirmative defenses need only be pleaded in "general terms").

- 15 -

is the standard she initially lays out: the standard for summary judgment. (Doc. 173 at 2.)

Under that standard, Guanzon's motion fails. To succeed on a motion for partial summary judgment, Guanzon "must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co.*, 210 F.3d at 1102. Guanzon has done neither. Rather than point to the aspects of the record that she believes undercut Vixxo's affirmative defenses, Guanzon merely argues those defenses were inadequately pleaded at the beginning of the case. But pleading is not at issue—Guanzon brought a summary judgment motion, so she has the burden of demonstrating that summary judgment is warranted here. *See generally* 2 Gensler, Rule 56, at 150-51 ("To 'show' that the nonmoving party lacks the proof it will need to prevail at trial, the moving party is generally required to do two things. First, the moving party must identify 'the basis' for its motion—i.e., the issue or issues in question for which the moving party claims there is a lack of evidence. Second, the moving party must point out to the court that there is an absence of evidence in the existing record to support the issue or issues in question. It is not perfectly clear how detailed the moving party must be . . . [but] all courts agree—and this was the critical point of *Celotex*—that the moving party's only burden is to address the existing proof and in some measure identify some hole in that proof."). Guanzon has not met that burden, so her motion for partial summary judgment is denied.

Accordingly, **IT IS ORDERED** that:

(1) Vixxo's motion for summary judgment (Doc. 172) is **denied**; and

(2) Guanzon's motion for partial summary judgment (Doc. 173) is **denied.**

Dated this 10th day of February, 2020.

Dominic W. Lanza
United States District Judge